SHAEV & FLEISCHMAN, LLP
ATTORNEY FOR DEBTOR/PLAINTIFF
1430 Broadway, Suite 1802
New York, NY 10018
646-722-8649

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: Vincent J Guarneri,<br><br>                     Debtor. | CASE NO. 16-10002 (jlg) |
| Vincent J. Guarneri,<br><br>                     Plaintiff,<br><br>  - against -<br><br>Maxim Commercial Capital, LLC,<br><br>                     Defendant. | Adv. Proc. No: |

## COMPLAINT

The Plaintiff, Vincent J. Guarneri (hereinafter referred to as "Guarneri" or "Debtor"), by his attorneys, Shaev & Fleischman, LLP, as and for his complaint, represents:

### JURISDICTION AND VENUE

1. This action seeks, amongst other claims, to expunge Proof of Claim # 6 filed by Maxim Commercial Capital LLC ("Maxim") on April 20, 2016, as amended on May 6, 2016, and as further amended on October 28, 2016, pursuant to Federal Rules of Bankruptcy Procedure 3001, Bankruptcy Code § 502 and 105, and Local Rules of the Bankruptcy Court for the Southern District of New York

2. This action further seeks to deem the written agreement between Maxim and Gotham as void and of no legal force or effect pursuant to Cal. Civil Code §§ 1916-1 to 1916-3, Cal. Const. Art XX, § 22, Cal. Commercial Code § 1203, and NY Business Corporation Law § 1312.

3. This action further seeks to deem the Continuing Guaranty of Indebtedness executed by Guarneri in favor of Maxim as void and of no legal force or effect.

4. This action further seeks to deem the Collateral Second Mortgage and Security Agreement executed by Guarneri in favor of Maxim and recorded as a mortgage lien against 1264 76th Street, Brooklyn, New York as void and of no legal force or effect.

5. This action further seeks a declaration that the debt allegedly owed by Guarneri to Maxim is void and of no legal force or effect.

6. This action further seeks reasonable expenses and attorneys' fees.

7. This Court has jurisdiction over this action, pursuant to 28 U.S.C. §§ 1334 and 157. This action is a "core proceeding" as that term is defined by 28 U.S.C. § 157.

8. This district is the appropriate district to consider this action, pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTS APPLICABLE FOR ALL CLAIMS FOR RELIEF

9. The Debtor filed a petition for relief under Chapter 13 of the United States Bankruptcy Code on January 4, 2016.

10. No previous bankruptcy case has been filed by the Debtor in this or any other district.

11. The Debtor completed and filed a Certification about a Financial Management Course, on January 15, 2016.

12. On April 25, 2016, an Objection to Confirmation of Plan was filed on behalf of Maxim wherein it was alleged that the Debtor's Chapter 13 Plan did not comply with the requirements of 11 USC § 1322 or 11 USC § 1325 inasmuch as it did not provide for full payment of Maxim's alleged secured claim.

13. A Motion to Dismiss case was filed on behalf of Maxim on July 12, 2016 wherein it was alleged that Debtor's Chapter 13 bankruptcy filing was in bad faith.

14. On July 26, 2016, Debtor filed and served a Motion for Sanctions against Maxim for filing of Proof of Claim #6, as amended.

15. Both the Motion to Dismiss and Motion for Sanctions were denied by the Court.

16. On October 28, 2016, Maxim further amended Proof of Claim # 6. This Complaint is based upon the last Proof of Claim filed by Maxim on October 28, 2016, a full copy of which is annexed hereto as Exhibit "A."

## THE ALLEGED LEASE

17. Guarneri is part owner of NY Gotham Printing and Graphics, Inc. ("Gotham"), a corporation organized pursuant to the laws of the State of New York and having a principal place of business in New York County.

18. Guarneri is sole owner of real property located at 1264 76th Street, Brooklyn, New York 11228 ("Property"), which he inherited from his parents. A copy of the deed to the Property as recorded in the Kings County Office of the City Register on June 15, 1994 is annexed hereto as Exhibit "B."

19. Guarneri maintains his primary residence at the Property, and does not own any other real estate.

20. On information and belief, the Property is valued at $950,000.00 before deducting costs associated with liquidation and sale.

21. There is a first lien on the Property held by Wells Fargo Bank, N.A. with a balance of approximately $66,000.00 ("First Mortgage"). The First Mortgage was recorded in the Kings County Office of the City Register on March 21, 2011.

22. As of the date on which the within Chapter 13 case was filed and continuing to the date hereof, all payments due on the First Mortgage have been current.

23. In approximately November 2013, Gotham sought to purchase the following business equipment ("Equipment") from Maxim, supplied by Pioneer Business Systems, Inc. ("Pioneer"), a corporation duly formed, upon information and belief, under the laws of the State of New York and having a principal executive office and address for service of process at 165 W 29th St, Fl 2, New York, NY 10001:

   a. Canon imagePRESS C7000VP Color Sheetfed Digital Press ("C7000VP"), together with a Saddle Finisher, Paper Deck and Fiery A2100 server;
   b. Konica Minolta Bizhub 1200, together with a Paper Deck and Model FS532 Finisher.

24. The purchase price quoted by Pioneer to Maxim to be paid for the Equipment was $140,000. See November 13, 2013 bill from Pioneer to Gotham, annexed hereto as Exhibit "C."

25. On January 12, 2014, Gotham executed a document entitled "Lease Commencement Authorization" with Maxim wherein Gotham authorized Maxim to pay the

sum of $140,000 to Pioneer for Maxim's purchase of the C7000VP. A copy of the Lease Commencement Authorization is annexed hereto as Exhibit "D."

26. On January 13, 2014, Gotham executed a document entitled "Commercial Lease Agreement" ("Agreement") with Maxim in connection with the Equipment. A copy of the Agreement is annexed hereto as Exhibit "E."

27. In the Agreement, in Paragraph 2 thereof, the parties thereto agreed that the Agreement would be governed by and interpreted in accordance with the internal laws of the State of California.

28. The Agreement called for Gotham to make monthly payments of $4,182 plus applicable taxes to Maxim for a period of 56 months.

29. On January 17, 2014, Gotham executed a document titled "End of Term Option" ("Option") with Maxim in connection with the Agreement, whereby Maxim granted to Gotham the option to purchase the Equipment at the conclusion of the Agreement for the Fair Market Value of the Equipment. A copy of the Option is annexed hereto as Exhibit "F."

30. As security for the payments due under the Agreement, Guarneri herein executed and delivered to Maxim a document entitled "Continuing Guaranty of Indebtedness" ("Guaranty"). A copy of the Guaranty is annexed hereto as Exhibit "G."

31. As additional security for the payments due under the Agreement and as additional security for the Guaranty, Guarneri executed and delivered to Maxim a document entitled "Collateral Second Mortgage and Security Agreement" ("Maxim Mortgage") in the amount of $140,000. A copy of the Maxim Mortgage as recorded in the Kings County Office of the City Register on January 28, 2014 is annexed hereto as Exhibit "H."

32. Immediately upon receiving the Equipment, Gotham began to experience significant problems with the operation of the Equipment. These problems were communicated to Pioneer numerous times. Copies of email correspondence from Gotham to Pioneer are annexed hereto as Exhibit "I" and discussed in the Eighth Cause of Action.

33. After repeated difficulties with the Equipment, Gotham uncovered that the machine purported to have been a C7000VP had been intentionally mislabeled and was really a Canon imagePRESS C6000VP Color Sheetfed Digital Press ("C6000VP"). The fact that Gotham had received a mislabeled machine from Maxim through Pioneer was discovered only after a number of months of difficulties with the original machine.

34. According to a press released issued by Canon the manufacturer on October 15, 2006, the C7000VP carried a manufacturer's suggested retail price of $230,000 for the imagePRESS C7000VP base print engine with imagePRESS Server A3000.

35. According to a press release issued by Canon the manufacturer on March 6, 2008, the imagePRESS C6000VP carried manufacturer's suggested retail price of $155,000.

36. The C6000VP prints at significantly lower speeds and has a markedly lower monthly print volume than the C7000VP.

37. Some six (6) months after receipt of the original machine, Gotham received a C7000VP that had been factory reconditioned. Though the C7000VP functioned when delivered, it malfunctioned after 3 weeks of use. Gotham was advised that the C7000VP would require $17,000 worth of parts and labor to function properly.

38. As a direct result of the misrepresentations of Pioneer and Maxim, Gotham and Debtor herein suffered losses in excess of $50,000.

## MAXIM FORECLOSURE

39. On February 4, 2014, Maxim filed a Summons and Complaint in the Supreme Court of the State of New York, County of Kings, under Index No. 501245/2015 seeking to foreclose on the Maxim Mortgage for non-payment/breach of the terms of the commercial lease or financing agreement ("Maxim Foreclosure").

40. According to the Complaint filed and served in the Maxim Foreclosure, the amount alleged to be due to Maxim from Gotham was $245,868.37 as of December 31, 2014 – a full 75.6% more than the original purchase price of the equipment originally financed for Gotham.

41. The Maxim Foreclosure, if successful, would have allowed Maxim to sell the Property and evict Guarneri from his home.

42. Attempts to settle the lawsuit in the state court were unsuccessful and Guarneri's remaining viable option was to file a Chapter 13 petition.

## MAXIM'S PROOF OF CLAIM

43. The Bar Date to file proof of claims in Guarneri's Chapter 13 proceeding was May 4, 2016.

44. On April 20, 2016, Maxim filed Proof of Claim #6 claiming a secured debt due in the amount of $309,041.04 ("Maxim Claim").

45. The Maxim Claim as originally filed consisted of 52 pages including the following:

    a. Schedule A, a narrative of the events surrounding the transaction;

    b. the Commercial Lease Agreement;

    c. Lease Commencement Authorization;

    d. Acceptance Certificate;

    e. End of Term Option;

    f. Continuing guaranty of Indebtedness;

    g. Collateral Second Mortgage and Security Agreement; and

    h. Purported accounting of charges alleged to be due to Maxim.

46. Absent from the Maxim Claim was the attachment prescribed by the Official Form 410A to be filed with a proof of claim for a creditor claiming a security interest in property that is a debtor's principal residence.

47. On April 26, 2016 bankruptcy counsel for Guarneri sent correspondence to Maxim indicating that the Maxim Claim did not meet the requirements of the Federal Rules of Bankruptcy Procedure and Official Forms ("April 26 Correspondence"). The April 26 Correspondence requested that Maxim amend the Maxim Claim to comply with the statutory requirements for a valid Proof of Claim.

48. The Maxim Claim was amended on May 6, 2016 ("Amended Maxim Claim").

49. The Amended Maxim Claim consisted of 55 pages including all documents contained in the Original Maxim Claim as well as a Mortgage Proof of Claim Attachment. Part 5 of the Mortgage Proof of Claim Attachment was not completed; rather, the following statement was inserted: NOT APPLICABLE. SEE SCHEDULE A TO PROOF OF CLAIM.

50. On May 24, 2016 bankruptcy counsel for Guarneri sent correspondence to Maxim indicating that the Amended Maxim Claim did not meet the requirements of the Federal Rules of Bankruptcy Procedure and Official Forms ("May 24 Correspondence"). The May 24 Correspondence requested that Maxim amend the Maxim Claim to comply with the statutory requirements for a valid Proof of Claim.

51. The Maxim Claim was once again amended on October 28, 2016 ("Second Amended Maxim Claim").

52. The Second Amended Maxim Claim consists of 52 pages including all documents contained in the Original Maxim Claim. The Second Amended Maxim Claim does not include a Mortgage Proof of Claim Attachment, but does include an account statement (Annexed to Proof of Claim as Exhibit D).

53. During the investigation of the supporting documentation for the POC, counsel for Guarneri found a UCC Financing Statement dated January 13, 2014 that had been filed with the Secretary of State for New York State and listing Gotham Printing and Graphics, Inc. as Debtor and *MaximBL, LLC* as Secured Party ("UCC Statement"). A copy of the UCC Statement is annexed hereto as Exhibit "J."

54. The entity listed as the Secured Party on the UCC Statement differs from the entity named as Lessor in the Proof of Claim filed by Maxim, as well as on each and every one of the documents executed by Gotham and Guarneri in connection with the underlying transaction.

55. The UCC Statement has not been disclosed to this Court, Debtor, or Counsel for Debtor in any filings or correspondence.

56. It is clear that Maxim's failure to disclose this document to the Court is a deliberate attempt to mislead the Court.

57. Further research reveals that Maxim was not authorized to do business in the State of New York at the time of the execution of the lease of equipment dated January 13, 2014 and the mortgage executed by the parties. Annexed hereto as Exhibit "K" is a copy of NYS Department of State/Division of Corporations for filing foreign corporations, listing Maxim Commercial Capital, LLC with initial filing date of July 2, 2015, well after Maxim entered into the lease equipment in NYS and the filing of a mortgage on Guarneri's property.

## FIRST CLAIM FOR RELIEF
### (Agreement Between Parties is a Financing Agreement)

58. All above paragraphs relevant hereto are incorporated herein by reference.

59. Pursuant to California Commercial Code 1203(b)

    A transaction in the form of a lease creates a security interest if the consideration that the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease and is not subject to termination by the lessee, and:

    (1) the original term of the lease is equal to or greater than the remaining economic life of the goods;

    (2) the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods;

(3) the lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement; or

(4) the lessee has an option to become the owner of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement.

60. Maxim purchased the Equipment from Pioneer in an arm's length transaction for $140,000, which was the fair market value of the Equipment as of the date of purchase.

61. The Agreement called for Gotham to make payments to Maxim totaling $234,192 plus applicable taxes.

62. The Agreement was not subject to termination by Gotham.

63. As was evidenced by the fact that the Equipment was non-functional within a short period of time after delivery thereof, the original term of the Agreement was greater than the remaining economic life of the Equipment.

64. Gotham had the option to become the owner of the Equipment at the end of the lease for the fair market value of the Equipment.

65. The fair market value of the Equipment as of the end date of the Agreement was nominal.

66. By filing a UCC Financing Statement in connection with the Agreement, it is clear that Defendant realized the transaction was nothing more than a thinly veiled attempt to create a security interest rather than a true lease.

67. Given the foregoing, pursuant to California Commercial Code 1203(b), the Agreement attempted to but failed to created a security interest rather than a true lease.

68. By failure to create a security interest in the appropriate party, Maxim is unsecured in its claim, at best.

## SECOND CLAIM FOR RELIEF
### (Agreement is Void due to Usury)

69. All above paragraphs relevant hereto are incorporated herein by reference.

70. Article XV, Section 1 of the California Constitution states as follows:

The rate of interest upon the loan or forbearance of any money, goods, or things in action, or on accounts after demand, shall be 7 percent per annum but it shall be competent for the parties to any loan or forbearance of any money, goods or things in action to contract in writing for a rate of interest:

(1) For any loan or forbearance of any money, goods, or things in action, if the money, goods, or things in action are for use primarily for personal, family, or household purposes, at a rate not exceeding 10 percent per annum; provided, however, that any loan or forbearance of any money, goods or things in action the proceeds of which are used primarily for the purchase, construction or improvement of real property shall not be deemed to be a use primarily for personal, family or household purposes; or

(2) For any loan or forbearance of any money, goods, or things in action for any use other than specified in paragraph (1), at a rate not exceeding the higher of (a) 10 percent per annum or (b) 5 percent per annum plus the rate prevailing on the 25th day of the month preceding the earlier of (i) the date of execution of the contract to make the loan or forbearance, or (ii) the date of making the loan or forbearance established by the Federal Reserve Bank of San Francisco on advances to member banks under Sections 13 and 13a of the Federal Reserve Act as now in effect or hereafter from time to time amended (or if there is no such single determinable rate of advances, the closest counterpart of such rate as shall be designated by the Superintendent of Banks of the State of California unless some other person or agency is delegated such authority by the Legislature).

No person, association, copartnership or corporation shall by charging any fee, bonus, commission, discount or other compensation receive from a borrower more than the interest authorized by this section upon any loan or forbearance of any money, goods or things in action."

71. The constitutional provisions are implemented by Cal. Civil Code §§ 1916-1 to 1916-3. Section 1916-1 provides as follows:

The rate of interest upon the loan or forbearance of any money, goods or things in action or on accounts after demand or judgments rendered in any court of this state, shall be seven dollars upon the one hundred dollars for one year and at that rate for a greater or less sum or for a longer or a shorter time; but it shall be competent for parties to contract for the payment and receipt of a rate of interest not exceeding twelve dollars on the one hundred dollars for one year and not exceeding that rate for a greater or less sum or for a longer or shorter time, in which case such rate exceeding seven dollars on one hundred dollars shall be clearly expressed in writing.

72. For non-consumer loans (i.e., not primarily for personal, family or household purposes), such as that which is contained in the Agreement, the statutory maximum rate of interest is either 10 percent per year or the "federal discount rate," plus 5 percent per year, whichever is greater. The "federal discount rate" has been below 5 percent since January 31, 2001 except for a short time period between December 13, 2005 and October

31, 2007 not relevant here since the loans were made in January 2014. As such, the maximum rate is 10 percent.

73. The constitutional provisions clearly indicate that loans with interest rates exceeding the maximum amount are unenforceable.

74. The Agreement, by calling for payments of $4,182 for a period of 56 months, results in total payments due to Maxim of $232,512. Based upon a purchase price of $140,000, this yields an interest rate of 24.044%. A copy of Amortization Schedule is annexed hereto as Exhibit "L."

75. As California courts have noted, a usurious transaction is a "loan or forebearance of money, goods or things in action" pursuant to which a "person, company, association or corporation" directly or indirectly takes or receives in "money, goods, or things in action, or in any other manner whatsoever, any greater sum or any greater value" than is allowed by law. *In re Huezo,* Case No. 2:11-bk-35922-RK, Adv. No. 2:11-ap-02825-RK (Bank. C.D.CA. 2016).

76. The essential elements of usury are: "(1) The transaction must be a loan or forbearance; (2) the interest to be paid must exceed the statutory maximum; (3) the loan and interest must be absolutely repayable by the borrower; and (4) the lender must have a willful intent to enter into a usurious transaction." *Ghirardo v. Antonioli,* 8 Cal.4th 791, 798, 35 Cal. Rptr.2d 418, 883 P.2d 960 (1994).

77. The Agreement by and between Maxim and Gotham involved a loan or forbearance of the use of money, and the interest to be received thereunder by Maxim was in excess of the statutory maximum rate that is applicable to the transaction. The loan and interest was absolutely payable by Gotham, and not contingent, at risk, or in Gotham's control.

78. Maxim has a willful intent to enter into a usurious transaction.

79. Given the foregoing, it is clear that the Agreement by and between Maxim and Gotham was usurious and, as such, should be deemed to be unenforceable pursuant to California law.

### THIRD CLAIM FOR RELIEF
### (Guarantee Void due to Usury)

80. All above paragraphs relevant hereto are incorporated herein by reference.

81. California Civil Code § 2810 states that

"A surety is liable, notwithstanding any mere personal disability of the principal, though the disability be such as to make the contract void against the principal; but he is not liable if for any other reason there is no liability upon the part of the principal at the time of the execution of the contract, or the liability of the principal thereafter ceases, unless the surety has assumed liability with knowledge of the existence of the defense.  Where the principal is not liable because of mere personal disability, recovery back by the creditor of any res which formed all or part of the consideration for the contract shall have the effect upon the liability of the surety which is attributed to the recovery back of such a res under the law of sales generally."

82. Given that the Agreement is unenforceable as a usurious transaction, this Court should find the Guarneri Guaranty to be unenforceable.

## FOURTH CLAIM FOR RELIEF
### Attorneys' Fees Allowed to Plaintiff/Debtor

83. All above paragraphs relevant hereto are incorporated herein by reference.

84. California Civil Code § 1717(a) provides:

In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

85. Paragraph 13 of the Agreement provides that Gotham shall pay to Maxim attorneys' fees incurred by Maxim in exercising its remedies thereunder.

86. Given the foregoing, this Court should award to Gotham reasonable attorney's fees and costs associated with this action.

## FIFTH CLAIM FOR RELIEF
### (Collateral Security Mortgage Void due to Usury)

87. All above paragraphs relevant hereto are incorporated herein by reference.

88. Given the fact that the Agreement is unenforceable as a usurious transaction pursuant to California Civil Code Sec. 2810, the Collateral Second Mortgage and Security Agreement executed by Debtor herein in favor of Maxim and recorded as a mortgage lien against 1264 76th Street, Brooklyn, New York is void and of no legal force or effect.

## SIXTH CLAIM FOR RELIEF

### (Financing Statement Deficient)

89.    All above paragraphs relevant hereto are incorporated herein by reference.

90.    The purported lease is actually a financing agreement requiring a properly filed financing statement pursuant to the terms of Article 9 of the California Commercial Code.

91.    California Commercial Code §9502 specifies that, in order for a financing statement to be legally sufficient, it must provide the name of the secured party or a representative of the secured party.

92.    On January 13, 2014 a UCC Financing Statement was filed against Gotham in New York County.

93.    The Secured Party's name listed on the UCC Financing Statement is MaximBL, LLC. (See Exhibit "J")

94.    There is nothing in any of the documents or agreements related to the transaction that indicates that MaximBL, LLC is in any way related to the transaction.

95.    There is nothing in the Financing Statement to indicate that MaximBL, LLC is a representative of the Secured Party.

96.    Given the foregoing, the Financing Statement must be ruled to be legally insufficient.

## SEVENTH CLAIM FOR RELIEF

### (Failure to Disclose Cause to Expunge Proof of Claim)

97.    All above paragraphs relevant hereto are incorporated herein by reference.

98.    Maxim's failure to disclose the UCC Statement in any prior proceedings is an act intended to mislead the Debtor and this Court as to the nature of its connection with the underlying transaction inasmuch as the existence and ramifications of the UCC Financing Statement directly affects findings of whether the transaction was a lease or financing agreement.

99.    The failure to reveal Maxim's lack of capacity to do business in New York State is similarly intended to mislead the Debtor and this Court as to the nature of Maxim's business dealings.

100. By reason of the facts that Maxim filed a UCC Financing Statement naming another entity as secured, and failed to reveal the defective UCC filing to this Court, the Proof of Claim should be expunged.

## EIGHTH CAUSE OF ACTION
### (Fraud and Unclean Hands)

101. All above paragraphs relevant hereto are incorporated herein by reference.

102. There is a long and sordid history between the parties to the "Commercial Lease. "

103. The fact is, that the Leasee, Gotham Printing, never received the equipment and Maxim, as owner of the equipment contracted for, knew or should have known that the equipment was not the equipment contracted for.

104. After allegedly delivering the Canon C7000VP, it was discovered (approximately six months after delivery), that the equipment was in fact a used Canon 6000VP, relabeled as a C7000VP and "freshened up" to look new. The equipment never functioned as promised and caused considerable monetary and other damage to Guarneri and Gotham as set forth hereinafter.

105. After discovering the fraudulent representation of equipment, Pioneer (Maxim's vendor) replaced the faulty and misidentified equipment with a factory re-conditioned C7000VP, which broke down after three weeks. Canon of America established that the substituted press would require a minimum of $17,000.00 in parts, plus unspecified labor charges to bring the equipment to proper function.

106. The substitution of the equipment by Maxim's vendor, Pioneer, is in and of itself an admission of wrongdoing in supplying incorrect machinery at the onset.

107. Annexed hereto as Exhibit "I" are a series of e-mails between the parties, bills, statements and photo documenting the above equipment scheme. For clarity purposes, many of the e-mails are from Walter Mollo (of Gotham) to Walter of Pioneer:

    a. E-mail from Gotham, Walter Mollo to Walter, dated 3.24.14, listing numerous problems with the equipment and questioning why it runs at one half the speed of a normal Canon C7000VP;

    b. E-mail from Walter Mollo to Walter at Pioneer dated April 21, 2014, discussing the delay in replacing the original equipment;

    c. E-mail from Walter Mollo to Walter at Pioneer, dated April 25, 2014 expressing frustration at the failure to replace the faulty equipment;

d. E-mail from Walter Mollo to Walter at Pioneer dated July 21, 2014 again complaining about failure to fix the equipment;

e. Invoices from Pioneer totally $18,027.68 for the period 2/7/2014 through 7/10/2014 to perform work for Gotham's customers due to the breakdown of equipment provided by Maxim through Pioneer. It is ironic, at best, that Gotham needed to outsource printing services to Pioneer due to failure of equipment provided by Maxim through Pioneer;

f. E-mail from Walter Mollo to Walter at Pioneer, dated Octobrt 29, 2014 with annexed photo of equipment reflecting a C6000VP machine rather than a C7000VP machine which was stated in the "commercial lease" and confirming conversation between the parties that the first machine was to be replaced;

g. Statement by Pioneer dated December 2, 2014 exchanging the Canon unit with a C7000VP unit and assuring Gotham that the replaced equipment was in good working order, although acknowledging at the same time that Pioneer did not service Canon equipment;

h. E-mail from Walter Mollo to Michael at Maxim, dated Feb. 13, 2015 discussing the fraudulent machine and the replacement machine which broke down.

108. It is apparent from the above, that Gotham and its guarantors (Guarneri and Mollo) were duped by both Maxim and Pioneer. In addition to the failure of Maxim to provide workable equipment, it provided equipment that was fraudulently altered to appear as a more sophisticated model, the Canon C7000VP. This is further evident by the e-mail by Walter Mollo expressing concern as to why the purported Canon C7000VP was half the speed experienced in prior use of Canon C7000VP. The simple answer was that Gotham and its guarantors leased a working Canon C7000VP and never received one.

109. In addition to the unclean hands exhibited above by Maxim, it failed to take any mitigating measures to properly replace the equipment or sell the equipment for whatever value it may have had. Instead, it participated in the replacement of the equipment with further unworkable equipment causing monetary damage to Gotham, of which the invoices partially exhibits.

110. Shortly after receiving the replaced equipment, the defective copier was removed from Gotham premises and placed in storage at Cube Smart Storage at a cost of $277.00 per month. The removal of the defective equipment was required to make room for working equipment purchased directly from Canon.

111. Apparently, counsel for Guarneri failed to bring any of these facts before the Supreme Court in the litigation between Maxim and Guarneri. In fact, counsel for Guarneri failed to interplead Pioneer in the Supreme Court action, which certainly seems ill advised. As such, counsel for Debtor in the bankruptcy has amended the bankruptcy schedules to include a possible malpractice cause of action.

112. Maxim's fraudulent actions in providing for wrong equipment, the fact that the equipment provided was defective and the failure of Maxim to mitigate damages throughout the sordid history between the parties, constitutes both fraud and unclean hands on the part of Maxim and, therefore, Proof of Claim # 6 should be expunged and damages and counsel fees awarded Guarneri in this case.

**WHEREFORE**, it is respectfully requested that the Court find as follows:

    **First Claim for Relief:** Judgment that the Agreement between the parties was in fact a financing transaction rather than a true lease and a failed attempt to create a security interest;

    **Second Claim for Relief**: Judgment that the Agreement between the parties is usurious and therefore unenforceable against the Plaintiff/Debtor;

    **Third Claim for Relief**: Judgment that the Agreement between the parties is usurious and therefore the Guarneri Guaranty is unenforceable;

    **Fourth Claim for Relief**: Judgment that the Agreement between the parties provides for attorneys fees and therefore provides for attorneys fees to be awarded to Plaintiff/Debtor and Gotham;

    **Fifth Claim for Relief**: Judgment that the Collateral Second Mortgage and Security Agreement executed by Plaintiff/Debtor herein in favor of Maxim and recorded as a mortgage lien against 1264 76th Street, Brooklyn, New York is void and of no legal force or effect;

    **Sixth Claim for Relief**: Judgment that the Agreement required a properly filed financing statement and that the filed Financing Statement is legally insufficient against Plaintiff/Debtor and Gotham;

    **Seventh Claim for Relief**: Judgment that Maxim, by failing to disclose to the Court defective UCC Financing filed on behalf of another entity, committed fraud and its Proof of Claim should be expunged;

**Eighth Claim for Relief**: Judgment that Maxim breached the Agreement between the parties by failure to provide the equipment stated in the Agreement, committed fraud by participating in knowingly provided mislabeled and defective equipment and unclean hands on the part of Maxim in its actions between the parties and lack of full disclosure in the filing of Proof of Claim # 6; and

The Plaintiff's/Debtor be awarded costs, disbursement and attorneys' fees in prosecuting this action; and such other and further relief as the Court deems proper.

Dated: January 6, 2017
New York, New York

/s/David B. Shaev
David B. Shaev, Esq.
Counsel for Debtor/Plaintiff
Shaev & Fleischman, LLP
1430 Broadway, Suite 1802
New York, NY, 10018
646-722-8649